UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                            Plaintiff,<br><br>                v.<br><br>LONNY S. BERNATH,<br><br>                           Defendant. | Civil Action No.:<br><br>**COMPLAINT** |

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

**SUMMARY**

1.      This enforcement action arises out of misrepresentations to investors by Lonny S. Bernath ("Bernath" or "Defendant") and his failure to disclose conflicts of interests presented by loans, investments, and other transactions made between several entities he managed and held financial interests in. Between at least 2007 and 2011, Defendant, without disclosing the transactions or conflicts of interests, directed Headline Group, LP ("Headline Fund"), Headline Partners, LP ("Partners Fund") and Dynasty Capital Partners, LP ("Dynasty Fund") (collectively referred to as the "Funds") to: (a) give loans to and make investments in three real estate limited partnerships ("Real Estate Partnerships") that Defendant managed and in which he held a financial interest; (b) make investments in an automotive chrome plating facility, ChromeEast, LLC ("ChromeEast"), in which Defendant held a financial interest; and (c) transfer investments and loans between themselves to meet liquidity needs. Furthermore, between at least 2009 and 2011, Defendant misrepresented the investment activities of the Funds to investors.

1

## DEFENDANT

2.  Defendant, age 43, is a resident of Charlotte, North Carolina. At all relevant times, Defendant operated the investment advisers to the Funds and the general partner of the Real Estate Partnerships. At all relevant times, Defendant directed the management of the Funds and was responsible for communications to investors and potential investors in the Funds. As of July 2015, Defendant no longer manages the Funds or the Real Estate Partnerships.

## OTHER RELEVANT ENTITIES

3.  Headline Investment Management, LLC ("HIM") operated as the investment adviser to the Funds between 2007 until March 2010. During all relevant times, HIM was located in Charlotte, North Carolina, and was managed by Bernath as owner and Chief Investment Officer ("CIO"). HIM was administratively dissolved in September 2010.

4.  Headline Capital Management, LLC ("HCM") operated as the investment adviser to the Funds between March 2010 and February 2015. During all relevant times, HCM operated in Charlotte, North Carolina, and was managed by Bernath as owner and CIO. HCM was administratively dissolved in February 2015.

5.  Cypress Capital Management, LLC ("Cypress Management") operated as the general partner and managed the Real Estate Partnerships. During all relevant times, Cypress Management operated in Charlotte, North Carolina, and was managed by Bernath. Prior to July 2008, Cypress Management operated under the name Novus Capital Management, LLC. Cypress Management was administratively dissolved in May 2013.

6.  The Real Estate Partnerships are three North Carolina Limited Partnerships created to make real estate investments on behalf of investing limited partners. The three limited

partnerships are Novus Partners, LP ("Novus"), Bayside Development, LP ("Bayside"), and Saxony Partners, LP ("Saxony").

7. ChromeEast is an automotive chrome plating facility located in Concord, North Carolina. During various times between 2007 and 2014, Mr. Bernath assisted in the management and operation of ChromeEast. During all relevant times, Bernath maintained a financial interest in ChromeEast.

## JURISDICTION AND VENUE

8. The Commission brings this action pursuant to the authority conferred upon it by Sections 20(b) and 20(d) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b) and 77t(d)], Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d)], and Sections 209(d) and 209(e) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-9(b) and 80b-9(d)].

9. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. §77v(a)], Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)], and Section 214 of the Advisers Act [15 U.S.C. § 80b-14(a)].

10. In connection with the transactions, acts, practices, and courses of business described in this Complaint, the Defendant, directly and indirectly, has made use of the means or instrumentalities of interstate commerce, of the mails, and/or of the means and instruments of transportation or communication in interstate commerce.

11. Certain of the transactions, acts, practices, and courses of business constituting the violations of law alleged herein occurred within this district.

## STATEMENT OF FACTS

### A. Background

12. Between at least 2007 and 2012, Defendant's advisory clients were comprised of several investments funds, including the Headline Fund, the Partners Fund, and the Dynasty Fund. Defendant provided advisory services through HCM, and its predecessor in interest HIM, as owner and CIO.

13. HCM, and its predecessor in interest HIM, collected quarterly investment advisory fees from the Headline Fund and the Dynasty Fund comprised of one-quarter of a percent of assets under management with a twenty percent performance fee. They also collected quarterly investment advisory fees from the Partners Fund comprised of one-half of a percent of assets under management with a twenty percent performance fee.

14. The Headline Fund was formed as a market neutral, statistical-based hedge fund that employed uncorrelated strategies across multiple asset classes including stocks, exchange-traded funds, and futures. Its core strategies were based on corporate earnings announcements.

15. The Partners Fund was formed in 2009 as a side-by-side fund of the Headline Fund to protect new investors from historic counter-party risk. As a side-by-side fund, the assets of both the Partners Fund and the Headline Fund were consolidated and the investment activity was identical.

16. The Dynasty Fund was formed to capitalize on a proprietary correlation model developed by Defendant utilizing 70 different Asian instruments including exchange-traded funds, American Depositary Receipts, and futures.

17. The investors in the Funds maintained limited partnership interests and were unable to exercise any management or investment decisions on behalf of the Funds. Each investor received a *pro rata* share of any gains or losses experienced by the Funds.

18. During the relevant period, Defendant also operated Cypress Capital, which managed the Real Estate Partnerships as the general partner. The Real Estate Partnerships were formed to capitalize on depressed real estate prices in Louisiana and Mississippi following the destruction caused by Hurricane Katrina.

### B. The Headline Fund's Transactions with Related Entities in 2007

19. In 2007, Defendant directed the Headline Fund to invest at least $584,250 into Bayside and $413,000 into Novus. Including those investments, the Headline Fund had approximately $9.3 million in assets.

20. At the time of the Headline Fund investments in 2007, Defendant managed Bayside and Novus through Cypress Capital. Defendant also held personal financial interests in Bayside and Novus totaling approximately $143,000.

### C. The Funds' Transactions with Related Entities in 2008

21. In 2008, Defendant directed the Headline Fund to invest an additional $312,000 in Bayside and $900,000 into ChromeEast. In 2008, the Headline Fund had approximately $11.6 million in assets.

22. At the time of the Headline Fund investments in 2008, Defendant managed Bayside through Cypress Capital. Defendant also held personal financial interests in Bayside and ChromeEast totaling approximately $75,000.

23. In 2008, Defendant directed the Dynasty Fund to purchase the Headline Fund's interests in Bayside, Novus, and ChromeEast for approximately $2.2 million. At the time the

Dynasty Fund purchased those interests from the Headline Fund, the Headline Fund needed capital to engage in its trading strategy and to help meet margin calls.

24. In 2008, Defendant also directed the Dynasty Fund to loan approximately $692,339 to Bayside. At the time of the loans, Bayside faced deteriorating market conditions and could not acquire credit from other sources to complete its construction projects.

25. During this period, Defendant managed Bayside and Novus through Cypress Capital. Defendant also held personal financial interests in Bayside, Novus, and ChromeEast totaling approximately $168,000.

### D. The Dynasty Fund's Transactions with ChromeEast in 2009 and 2010

26. During 2009 and 2010, ChromeEast required additional capital to continue operations after losing a major service contract. Defendant directed the Dynasty Fund to invest an additional $425,000 in ChromeEast that was used to cover overhead and other operational expenses.

27. During the same period, the Dynasty Fund held as much as $7.5 million in assets. Of that amount, approximately $2.6 million was comprised of interests in Bayside, Novus, and ChromeEast. Defendant also held a personal financial interests in Bayside, Novus, and ChromeEast totaling approximately $168,000.

### E. The Funds' Transactions with Related Entities in 2011

28. In 2011, Defendant directed the Headline Fund and the Partners Fund to purchase the Dynasty Fund's interests in Bayside and ChromeEast for at least $1.8 million. At the time of the transaction, the Dynasty Fund needed additional capital to meet redemption requests.

29. In 2011, Defendant also directed the Headline Fund and the Partners Fund to contribute $1.4 million towards a loan for Saxony.

6

30. At the time of the Headline Fund and the Partners Fund investments in 2011, Defendant managed Bayside and Saxony through Cypress Capital. Defendant also held personal financial interests in Bayside, Saxony, and ChromeEast totaling approximately $522,000.

31. From 2008 until 2011, Defendant periodically wrote down the value of the Funds' investments in the Real Estate Partnerships and ChromeEast, to the detriment of the Funds' investors and without their knowledge.

### F. Failure to Disclose the Funds' Transactions with Related Entities and Misleading Statements

32. Defendant did not disclose any of the Funds' transactions with Bayside, Novus, Saxony, ChromeEast, or the transactions between the Funds until 2013.

33. Between at least 2009 and 2011, Defendant provided investors and potential investors in the Dynasty Fund with monthly newsletters describing the Dynasty Fund and its activities. The monthly newsletters explained that the Dynasty Fund traded 70 different instruments to isolate the US impact on Asian instruments utilizing its own correlation calculation.

34. Defendant drafted the monthly newsletters to the Dynasty Fund and distributed them to investors and potential investors.

35. During the period of time the monthly newsletters were drafted and distributed to the Dynasty Fund, the Dynasty Fund had as much as $7.5 million in assets. Of the Dynasty Fund's $7.5 million in assets, as much as $2.6 million was comprised of investments and loans associated with Bayside, Novus, Saxony, and ChromeEast.

36. In 2011, Defendant provided investors and potential investors in the Headline Fund and the Partners Fund with monthly newsletters describing both and their activities. The

monthly newsletters explained that the Headline Fund and the Partners Fund invested only in liquid instruments and that its core strategies were based on corporate earnings announcements.

37. Defendant drafted the monthly newsletters to the Headline Fund and the Partners Fund and distributed them to investors and potential investors.

38. During the period of time the monthly newsletters were drafted and distributed to the Headline Fund and the Partners Fund investors, the combined assets of both was approximately $4.5 million. Of that amount, approximately $3.2 million was comprised of investments and loans associated with Bayside, Saxony, and ChromeEast.

39. The monthly newsletters to investors and potential investors in the Funds omitted any reference the Funds' transactions with Bayside, Novus, Saxony, or ChromeEast.

40. Some of the investors in the Funds who received the monthly newsletters thereafter purchased or redeemed interests in the Funds.

41. Some of the investors in the Funds declined to invest personally in Bayside, Novus, or Saxony when solicited to do so by the Defendant.

## FIRST CLAIM FOR RELIEF

### Violations of Section 17(a) of the Securities Act

### [15 U.S.C. § 77q(a)]

42. The Commission realleges paragraphs 1 through 40 above.

43. As a result of the conduct described above, Defendant violated Section 17(a) of the Securities Act and unless restrained and enjoined may in the future violate that provision of the Securities Act.

## SECOND CLAIM FOR RELIEF

## Violations of Section 10(b) and Rule 10b-5 of the Exchange Act

## [15 U.S.C. § 78j(b) & 17 C.F.R. § 240.10b-5]

44. The Commission realleges paragraphs 1 through 40 above.

45. As a result of the conduct described above, Defendant violated Section 10(b) and Rule 10b-5 of the Exchange Act and unless restrained and enjoined may in the future violate those provisions of the Exchange Act.

## THIRD CLAIM FOR RELIEF

## Violations of Sections 206(1) and 206(2) of the Advisers Act

## [15 U.S.C. §§ 80b-6(1) & 80b-6(2)]

46. The Commission realleges paragraphs 1 through 40 above.

47. As a result of the conduct described above, Defendant violated Sections 206(1) 206(2) of the Advisers Act and unless restrained and enjoined may in the future violate those provisions of the Advisers Act.

## FOURTH CLAIM FOR RELIEF

## Violations of Section 206(4) and Rule 206(4)-8 of the Advisers Act

## [15 U.S.C. § 80b-6(1) & 17 C.F.R. §206(4)-8]

48. The Commission realleges paragraphs 1 through 40 above.

49. As a result of the conduct described above, Defendant violated Section 206(4) and Rule 206(4)-8 of the Advisers Act and unless restrained and enjoined may in the future violate those provisions of the Advisers Act.

## PRAYER FOR RELIEF

The Commission respectfully requests that this Court:

1. Find that Defendant committed the violations alleged;

2. Enter injunctions, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently restraining and enjoining Defendant from violation, directly or indirectly, or aiding and abetting violations of the law and rules alleged in this complaint;

3. Order Defendant to conduct an accounting of all funds received by Defendant from investors or clients pursuant to the events described in the Commission's Complaint and of the disposition and use of said funds. This accounting shall include, but not be limited to: (a) any investments by or payments to investors in any of the entities identified in the Complaint; and (b) any proceeds received by Defendant or related entities in relation to the management of the various entities identified in the Complaint.

4. Order Defendant to disgorge all ill-gotten gains in the form of any benefits of any kind derived from the illegal conduct alleged in this Complaint, plus prejudgment interest;

5. Order Defendant to pay civil penalties, pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)] in an amount to be determined by the Court; and

6. Order such other relief as is necessary and appropriate.

Dated: October 13, 2014

s/ Joshua A. Mayes
Joshua A. Mayes
Georgia Bar No. 143107
Senior Trial Attorney
United States Securities & Exchange Commission
950 E. Paces Ferry Road NE

Suite 900
Atlanta, GA 30326
404-842-5747
mayesj@sec.gov